IN THE MATTER OF THE ESTATE OF JOHN BROWN, Deceased.

| 113 | 351 |
| e117 | 716 |
| 113 | 351 |
| 131 | 659 |
| 113 | 351 |
| 138 | 348 |
| e138 | 672 |
| 113 | 351 |
| 144 | 199 |

**Eexcutors:** EXCEPTIONS TO REPORT; *Relief against executor personally.* Where an executor receives money belonging to a third person, and does not use it for the benefit of the estate, but for his own use, and reports it as estate property, such person cannot hold the executor liable on objections to his account in the probate court, even though the exceptions were broad enough to show that the executor was individually liable. Since it is not the office of such exceptions to demand affirmative relief and the report was so framed that acquiescence would have been fatal to holding the executor liable as an individual, the objecter must as to that individual liability, resort to an action in a court of campetent jurisdiction.

INTEREST ON MONEYS USED. Where an executor uses estate moneys for his own purposes, he is chargeable with interest thereon.

Joint Ownership: EVIDENCE. A husband deposited money in the bank and took a certificate in the name of himself and wife. The wife testified, in a suit against the executor of the husband, that she had bought a portion of the farm twenty-five years before; and the executor, who was a son of deceased, testified that the money deposited was earned on the farm. *Held,* not to show that the money was not jointly owned by husband and the wife, as indicated by the joint certificate.

SAME: *Gifts.* A husband deposited money in the bank, and took the certificate jointly in the names of himself and wife, and stated to the banker that he did so to enable the wife to draw money on his death. He was informed by the banker that the latter would pay either husband or wife. The husband gave the certificate to the wife to keep, but there was no evidence that he intended to part with the title thereto. *Held,* not sufficient to show a gift to the wife, and hence not to prevent one-half of such sum from passing to the executor of the husband.

SAME. Evidence of the banker's understanding that certain money deposited with him by deceased, for which certificates were issued jointly to deceased and his wife, belongs to the former, is entitled to no weight on an issue between the executor and the wife as to the ownership of such money.

*Trusts.* Such evidence was not sufficient to show that money was left with the banker as trustee, his obligation being similar to that of a maker of a note.

*Appeal from Jones District Court.*—HON. H. M. REMLEY, Judge.

WEDNESDAY, APRIL 10, 1901.

UPON the death of John Brown, in December, 1896, his wife, Mary, and son, Maurice, were appointed executors of his estate. In February, 1898, Maurice stated in his report as executor that deceased had deposited in the bank of L. Schoonover at the time of his death, evidenced by certificates of deposit, $1,600, of which he had no knowledge in filing the inventory, and asked that the same be distributed one-third to his mother, and the balance to him, as he had purchased his sister's interest. To this the mother filed objections, supported by her affidavit that the certificates were her individual property, but these were subsequently withdrawn, and the report approved. December 8 following, Maurice filed his final report, to which the widow filed exceptions, averring, in substance, that the certificates referred to belonged to her, and ought not to be included in the settlement of the estate; that said Maurice never had but $1,000 thereof, and that was loaned to him by the mother to enable him to purchase his sister's interest; that she neither signed nor was consulted about any of the reports filed; that she was induced to withdraw her objections to the former report by his promise to support and maintain her, which he had failed to carry out—all to mislead and cheat said widow. And she prays that the approval of the former report be set aside and the executor be required to account for said money. Later, Maurice filed a substituted report, setting out the agreement wihdrawing exceptions to the former report, and averring that the estate was settled as therein mentioned. The district court ordered the report set aside, and Maurice, as executor, to pay the widow, with

other sums, the amount of the certificates. From this order he appeals.—*Modified.*

*C. J. Case* and *D. McCarn* for appellant.

*Ellison & Ercanbrack* for appellee.

Ladd, J.—Money had been kept on deposit by deceased in the bank of L. Schoonover for many years, evidenced by certificates of deposit in the name of John or Mary Brown. The certificates in controversy were issued October 15, 1896, to John and Mary Brown. According to the banker, they were so drawn that in event of Brown's sudden death his widow, rather than administrator, might obtain the money. He appears to have made the deposits, but she to have taken care of the certificates. The source of this money is not disclosed, though she testified to having bought 120 acres of the farm 25 years prior to the trial; and Schoonover, to his understanding that it belonged to her husband. Maurice, the son, relates seeing his father deposit money, and states generally that it was earned on the farm. Conceding all said, save Schoonover's understanding, which can be given no weight, to be true, and it is not in any way inconsistent with the joint ownership indicated by these certificates. Nor do we think the deceased parted with his interest therein during his lifetime. It appears to have been his design to have the certificates so drawn that he might have and control them while living, and that upon his death they might pass *eo instante* to his wife. Schoonover testified: "The reason he gave for having the certificates drawn to himself and her was that if he died she would draw the money. * * * When he first put money in there he seemed to have a fear that he might drop off, and then she could get the money, and no one else, and if he wanted it he could come and get it himself." The witness advised that he would pay either on the presentation of the certificates.

This indicates no intention to part with the title or control during life. If not, then the transaction fell short of a gift, as there was no present delivery. True, the certificates were placed in the wife's keeping, but not with the purpose of transferring title. Each still had the right to draw the money. In order to constitute a gift, there must be an actual transfer by the donor of all right and dominion over the thing given. If this is to happen in the future, it amounts to no more than a promise without consideration, and may be disregarded. *Furenes v. Eide,* 109 Iowa, 511. In the authorities cited by appellee a present delivery was intended, or else the instrument had been left with a third party, without reservation or right of recall, to be delivered at death. See *Guinan's Appeal,* 70 Conn. 342 (39 Atl. Rep. 482) ; *Schollmier v. Schoendelen,* 78 Iowa, 426 ; *Dettmer v. Behrens,* 106 Iowa, 585. Nor can it be said that the money was left with Schoonover as trustee. There is nothing to indicate that his obligation was other than as stipulated in the certificates of deposit. And by these he was payor to the joint payees therein named, with liability similar to that of maker in a promissory note. *Mereness v. Bank,* 112 Iowa, 11. Under the evidence the deceased and his wife were joint owners of these certificates at the time of his death, and his undivided one-half interest therein should be distributed as a part of his estate.

II.    The report, including the entire amount of the certificates as property of the estate, filed in February, 1898, was approved in May of that year, the widow having withdrawn exceptions previously filed. As part of the relief prayed in her objections to the final report, she asked that the above order of approval be set aside, and the executor, Maurice Brown, be required to account to her for the money represented by the certificates. Evidently this woman of 75 years, unable to read or write, confided in her son implicitly in the management of the estate, and, if she is to be believed as against him, was induced to sign the agreement withdraw-

ing the exceptions to the report without hearing it read, and without understanding that the $1,000 of the proceeds of the certificates were being turned over to him as executor of the estate. Without reviewing the evidence, it is enough to say that we are content with the conclusion of the district court that the order should be vacated. See *Dorris v. Miller*, 105 Iowa, 565. But this money was not used for the benefit of the estate. The executor, Maurice Brown, paid it for his sister's interest in the estate, taking title in himself individually. That an action may not be maintained against an executor under such circumstances was settled in *Valley Nat. Bank v. Crosby*, 108 Iowa, 651. The mere fact that he reported it as property of the estate does not make it such. To hold otherwise would permit him, by including private indebtedness in his report, to saddle his individual obligations on the estate, and this, possibly, at the expense of his bondsmen. It is said that enough was contained in the objections filed to warrant such relief. But these were directed at the final report, which proceeded on a theory such that acquiescence therein by the widow would have been fatal to any claim against the executor individually. The office of exceptions to such reports is not to demand affirmative relief, but to call the attention of the court to errors of omission or commission in the statements of account. The report and the objections form the issues to be tried to the court, and involve no more than the correctness of the account presented by the executor as such. His individual liability is not involved. The claims of the widow against her son individually must be determined in a jurisdiction other than the court of probate.

Our conclusion, briefly stated, is that the executor should be charged with one-half of the face of the certificates, with the interest accrued up to the time he received the money; and as he made use of that received, in his own business, he should account for interest thereon at the rate of 6 per cent. per annum, with annual rests. The remaining one-

half of the certificates and interest belongs to Mrs. Brown individually, to whom her son is accountable individually for the portion in his hands, and not as executor. The judgment as thus modified is affirmed; the costs in both courts to be paid from the funds of the estate.—MODIFIED and AFFIRMED.