DURANT–WILTON MOTORS, INC., Appellant,

v.

TIFFIN FIRE ASSOCIATION, Appellee.
No. 53323.

Supreme Court of Iowa.
Feb. 11, 1969.

Eckerman, McFerren, Fair & McGrath, Davenport, for appellant.

Nolan, Lucas & Nolan, Iowa City, for appellee.

LARSON, Justice.

In a suit for replevin brought by plaintiff Durant-Wilton Motors, Inc. on July 30, 1966, against the Tiffin Fire Association, the trial court denied relief on the ground that the fire truck involved was exempt from the registration and certificate of title provisions of chapter 321 of the 1966 Code. It appeals. We affirm.

Questions presented on this appeal are (1) whether a motor truck cab and chassis made into a fire truck and sold to a nonprofit fire association falls within the provisions of section 321.45(2) of the Code barring the right, title, and claim of ownership of the appellee association without a certificate of title, and (2) whether such a vehicle is excepted from the registration provisions of the chapter by section 321.-18(4) as "special mobile equipment." Obviously the problem presented is one of statutory construction and interpretation.

The plaintiff is a Ford dealer doing business in Durant, Iowa. The defendant is a nonprofit corporation located at Tiffin, Iowa, primarily serving Union and Clear Creek Townships in Johnson County, Iowa. The Central Fire Truck Corporation of Manchester, Missouri, at the times involved herein, was engaged in building and selling fire trucks and other fire-fighting equipment. Mr. Bruckman was its representative and salesman in Iowa and in

May 1964 procured an order for a new fire truck from defendant. Bruckman thereafter, on behalf of his company, ordered a truck cab and chassis from the plaintiff which was to be delivered direct from the factory to the Central Fire Truck Corporation, hereinafter referred to as Central. The Manufacturer's Statement of Origin to a Motor Vehicle dated June 5, 1964, was delivered to plaintiff and is still in its possession. The sale price of the cab and chassis was $5,050, which apparently was not paid by Central. No notice, actual or constructive, was given defendant of this fact prior to the completion of the sale transaction between it and Central, although it appears plaintiff knew of the intended use of the cab and chassis.

At the time of delivery of the new truck on February 3, 1965, defendant paid Central $17,724 by a trade-in of an old truck valued at $4,500, cash of $1,444.90, and a note with chattel mortgage in the sum of $11,780. It appears this note and mortgage were assigned to a third party, one Sassen, before default, and the mortgage was placed of record on February 19, 1965. Sassen was the owner of this obligation at the time of trial. He had received one payment on the note and some $10,000 balance remains unpaid. Defendant did not demand or receive any written evidence of title to the truck from Central at the time of delivery, and made no application for title certificate or registration to the county treasurer. It relies upon an unencumbered record of title in the recorder's office and possession of Central to establish its ownership.

Although there is some claim that the sale of this cab and chassis was to the defendant, the evidence is all to the contrary. The invoice from plaintiff was to Central, and at no time before defendant took delivery and paid Central did plaintiff make any demand against defendant for the sale price thereof.

■ I. There are many sections in chapter 321 of the 1962 Code which relate to title and registration requirements. They reveal a legislative purpose to prevent fraud in the purchase and sale of motor vehicles generally, and provide an exclusive method of transfer of title thereto except those which fall within the exceptions enumerated. See articles by Professor Richard S. Hudson in Vol. 3, No. 1, Drake L.Rev. 3–22; Vol. 4, No. 2, Drake L.Rev. 86–97; Vol. 14, No. 1, Drake L. Rev. 36–45; Vol. 17, No. 1, Drake L.Rev. 25–52; also see Vol. 42, Iowa L.Rev. 72–90, at 82. In several cases we have considered and applied this announced purpose. Varvaris v. Varvaris, 255 Iowa 800, 124 N.W.2d 163, 100 A.L.R.2d 1215; Calhoun v. Farm Bureau Mutual Ins. Co., 255 Iowa 1375, 125 N.W.2d 121; Northern Insurance Co. v. Miller, 256 Iowa 764, 129 N. W.2d 28. However, the nub of this controversy is whether the legislature intended to and did exempt fire trucks from the registration and title certificate requirements of chapter 321.

■ It is a cardinal principle of statutory construction that the intent of the legislature is to be gleaned from the statute read as a whole, and not from any one section or portion thereof taken piecemeal. Iowa Natural Resources Council v. Van Zee, Iowa, 158 N.W.2d 111, 114, and citations.

■ Although the rule of statutory construction that any exemption or exception in a statute contrary to its stated purpose must be strictly construed and all doubts should be resolved in favor of the general provisions (Wood Bros. Co. v. Eicher, 231 Iowa 550, 562, 1 N.W.2d 655, 661), we are inclined to agree with the trial court that government-owned vehicles not used to convey persons for hire or to transport freight and specifically-mentioned fire trucks not used for pecuniary profit are exempt from the registration and certificate of title requirements specified for motor vehicles generally. A careful consideration of sections 321.18, 321.19 and 321.21 seems to sustain that view.

II. Section 321.45(2), Code of 1966, provides:

"No person shall acquire any right, title, claim or interest in or to any vehicle *subject to registration under this chapter* from the owner thereof except by virtue of a certificate of title issued or assigned to him for such vehicle or by virtue of a manufacturer's or importer's certificate delivered to him for such vehicle; nor shall any waiver or estoppel operate in favor of any person claiming title to or interest in any vehicle against a person having possession of the certificate of title or manufacturer's or importer's certificate for such vehicle for a valuable consideration except in case of * * * (not applicable here). Except in the above enumerated cases, no court in any case at law or equity shall recognize the right, title, claim or interest of any person in or to any vehicle subject to registration sold or disposed of, or mortgaged or encumbered, unless evidenced by a certificate of title or manufacturer's or importer's certificate duly issued or assigned in accordance with the provisions of this chapter." (Emphasis added.)

In the case at bar it is conceded the plaintiff sold the cab and chassis to Central for the purpose of making them into a fire truck for the defendant.

Section 321.18 specifically excepted certain vehicles from the registration and title certificate requirements of the chapter. It states: "Every motor vehicle * * * when driven or moved upon a highway shall be subject to the registration provisions of this chapter except: * * * 4. Any special mobile equipment as herein defined. * * *"

"Special mobile equipment" is defined in section 321.1(17) as "* * * every vehicle *not* designed or used *primarily* for the transportation of persons or property and *incidentally operated* or moved over the highways, including trailers and bulk spreaders which are not self-propelled * * * but not including trucks mounted with applicators of such products, road construction or maintenance machinery and ditch-digging apparatus. *The foregoing enumeration shall be deemed partial and shall not operate to exclude other such vehicles which are within the general terms of this subsection*; provided that nothing contained in this section shall be construed to include portable mills or cornshellers mounted upon a motor vehicle or semitrailer." (Emphasis added.)

Section 321.19 provides:

"All vehicles owned by the government and used in the transaction of official business by * * * the state of Iowa, counties, municipalities and other subdivisions of government, and such self-propelling vehicles as are used *neither* for the conveyance of persons for hire, pleasure, or business nor for the transportation of freight, and all fire trucks, providing they are not owned and operated for a pecuniary profit, *are hereby exempted* from the payment of the fees in this chapter prescribed, * * *. *The department* shall furnish, on application, free of charge, distinguishing plates for vehicles thus exempted, which plates shall bear the word 'official', and the department shall keep a separate record thereof. * * *" (Emphasis added.)

Section 321.39 exempts such vehicles from the requirement that registrations under this chapter expire on the 31st day of December of each year.

Although section 321.19 does not specifically state that fire trucks are exempt from the certificate of title requirement of the chapter as does 321.21(6), appellee contends and the trial court held this was the meaning and intent of that section, that the exemption intended was the same as that in section 321.21.

Section 321.21 provides:

"1. A person owning any special mobile equipment as herein defined *may* make application to the *department*, * * * for a certificate containing a general distinguishing number and for one or more * * *

plates as appropriate to various types of special mobile equipment. * * *

"2. The department upon granting such application, shall issue * * * a certificate containing, but not limited to, the applicant's name and address and the general distinguishing number assigned * * * and such other information deemed necessary by the department for proper identification.

* * *

"6. The certificate and plates issued hereunder shall be *for purposes of identification only* and shall not constitute a registration as required under the provisions of this chapter. *A certificate of title need not be executed when the certificate and plates are issued hereunder and a certificate of title need not be delivered to the purchaser or transferee* when special mobile equipment is sold or otherwise disposed of." (Emphasis added.)

The legislative intent to exclude such vehicles from the exclusive transfer of title provisions of the chapter is manifest and clear.

III. Appellant, however, contends that fire trucks are not special mobile equipment as defined in section 321.1(17) and are not mentioned as exempt vehicles, that although certain fire trucks are exempt from the payment of fees under section 321.19, they are not exempt from registration therein and that the specific exemptions found in 321.21(6) do not apply to fire trucks.

Appellee contends that, although fire trucks are not specifically listed in section 321.1(17), they clearly fall within the general definition of "special mobile equipment" and are recognized by the general provision that "The foregoing enumeration shall be deemed partial and shall not operate to exclude other such vehicles which are within the general terms of this subsection; * * *." It also contends the registration provisions contained in section 321.18 are not those intended by the phrase "subject to the registration provisions of

this chapter", but are those specifically considered in section 321.21(6), i.e., registration with the public safety department "for purposes of identification only and shall not constitute a registration as required under the provisions of this chapter." It maintains a registration required "under the provisions of this chapter" is a registration at the county treasurer's office in the county of the owner's residence, not with the department. It further contends sections 321.1(17), 321.18, 321.19, and 321.-21 must be read together to properly construe the legislative provisions for vehicle exemption from the registration and certificate requirements of the chapter and, when so interpreted, the provision in subsection 6 of 321.21 does specifically provide that a certificate of title need not be executed or delivered to a purchaser or transferee when a fire truck not used for pecuniary profit is sold or otherwise disposed of.

Although a fire truck is not specifically mentioned in 321.1(17), we are satisfied it falls within the general terms of the subsection and that we should construe these exemption sections together to determine the legislative intent as to the registration and certificate of title provisions of the chapter. We are inclined to agree with the appellee and the trial court that government vehicles including fire trucks not operated for pecuniary profit, when not used for the transportation of persons for hire, etc. or the transportation of freight, are exempt from the general registration and certificate of title requirements of the chapter.

IV. In any event we are satisfied this fire truck is special mobile equipment under section 321.21 and as such is specifically exempt from the title certificate and registration requirements of the chapter, and that it could be purchased, owned, and transferred without such a certificate. This fire truck was designed and is used primarily for fighting fires only, not for the transportation of persons and property.

Its operation over the highways of the state is incidental to its use in fighting fires in that locality. The fact that this truck transports fire-fighting equipment and occasionally transports fire fighters does not defeat its primary use and purpose. It is an emergency vehicle and, although it is not mentioned specifically as an exempt vehicle in this section, we would be hard pressed to find a vehicle which would more clearly fit under the formula announced therein.

True, the record does not disclose whether this truck was registered with the department under either sections 321.18 or 321.21, but this seems immaterial to the issue here, which is whether such a vehicle is excluded from the exclusive transfer requirements of this chapter. It may be argued the fee exemption in section 321.18 applies to 321.21 and that registration with the department is optional. We need not resolve that question here since we are satisfied this fire truck falls within the exception set out in section 321.21 and that title was conveyed to defendant subject to the recorded mortgage of Central's assignee.

We have searched diligently for cases which consider whether a fire truck is special mobile equipment, but have found none premised upon a general provision of primary use and incidental operation. However, we note in the recent Colorado case of Board of County Commissioners v. E. J. Rippy & Sons, 161 Colo. 261, 421 P. 2d 461, the court considered a similar statute which, in addition to its general terms, specifically mentioned fire-fighting apparatus in its special mobile equipment exclusion from certificate of title and registration requirements. See 1960 Perm.Supp., C.R.S. '53, section 13-1-1(48).

Appellant relies heavily on the case of Crown Concrete Co. v. Conkling, 247 Iowa 609, 75 N.W.2d 351, in an attempt to sustain its position that fire trucks are not to be classified as special mobile equipment. True, the legislature by chapter 128, section 1, Acts of the 48th General Assembly, gave special consideration to similar corn-shellers and portable mills mounted on a truck chassis and directed that they not be exempt as special mobile equipment. It did not include fire trucks in that amendment.

However, we believe there is a marked distinction between a truck chassis upon which a cement mixer, feed grinder, or portable mill is mounted, and a chassis converted into a fire-fighting machine. As pointed out by appellee, the conversion here consists of much more than a mere machine mounting. It also involves considerable mechanical alterations. We find little similarity between transporting cement from plant to construction site regularly and the incidental movement of the fire truck when a fire emergency arises, but if the distinction does not appeal to the legislature it can specially classify it as was done in the cement mixer case.

V. We conclude that even though fire-fighting equipment was not specifically mentioned as being exempt from the registration and certificate of title provisions of the chapter, the legislature intended to exclude such a fire truck from the exclusive title and transfer provisions therein when the truck was not owned and operated for a pecuniary profit, and we hold that a certificate of title need not be procured or assigned when buying and selling such a vehicle.

VI. The trial court held that the provisions of section 321.45, which provides that waiver and estoppel shall not operate in favor of a buyer, have no application here, and found that plaintiff delivered this cab and chassis to Central knowing that it was to be converted into an equipped fire truck for resale to defendant but took no action to protect itself against this later sale or against the acquiring of title by the defendant, and that a waiver and estoppel was effective against plaintiff. Since this issue was not argued on appeal, we need not consider it here.

Affirmed.

All Justices concur.